JUDGE DAVID BRIONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2022 NOV -4  PM 2:20
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                DEPUTY

| | |
|---|---|
| YAZMIN GONZALEZ, | § |
| Plaintiff, | § |
| v. | § EP22CV0410 |
| CERTIFY STUDENT SERVICES, INC a California Corporation and SHANE J. LEE | § |
| Defendant. | § |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1. The Plaintiff is YAZMIN GONZALEZ ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2. Defendant CERTIFY STUDENT SERVICES, INC., ("CERTIFY") is a corporation organized and existing under the laws of California and can be served via registered agent Hitu Bhakta, 1952 Roanoke Ave, Tustin, CA 92618.

3. Defendant SHANE J. LEE ("Lee") is a natural person resident of California and upon information and belief is the primary owner, Chief Executive Officer and Chief Financial Officer of Defendant CERTIFY and can be served at 110 Spiral, Irvine, California 92780.

**JURISDICTION AND VENUE**

4. **Jurisdiction.**   This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter

1

jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

5. **Personal Jurisdiction.** This Court has specific personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, derive revenue from Texas residents, and sell goods and services to Texas residents, including the Plaintiff. Defendants purposefully place calls to Texas residents and mail documents to Texas residents that hire Defendants for their services.

6. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when she received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

7. This Court has venue over the Defendants because the calls at issue were sent by or on behalf of the above-named Defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

8. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

9. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

11. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

12. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

14. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

15. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

3

16. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

17. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

18. The FCC confirmed this principle in 2013 when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

19. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

20. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate

actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code § 302.101

21. The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in the state of Texas.

22. The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

23. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

### FACTUAL ALLEGATIONS

24. Plaintiff's personal cellular telephone number ending in -1859 has been successfully registered on the National Do-Not-Call Registry since March 2022.

25. From April 4, 2022, to August 26, 2022, Plaintiff received at least six (6) calls to her phone ending in -1859, without her prior express consent and not related to an emergency purpose.

26. Defendant initiated unsolicited calls from a variety of spoofed caller IDs that contained a prerecorded message.

27. On August 16, 2022, Plaintiff received a voicemail with a pre-recorded voice message that did not identify Defendants, the call originated from a spoofed number ending in -7026 which began with "Hi this is Jenny from the national student loan center." The message eventually instructed Plaintiff to call phone number 214-849-3773.

28. Each and every phone call Plaintiff received began with the same prerecorded voice message stating "Hi this is Jenny from the national student loan center."

29. Plaintiff did not want or need student loan forgiveness. However, in order to cease harassment from anonymous telemarketers, such as Defendants, Plaintiff called the number stated during the voicemail to identify who was behind the call.

30. On October 7, 2022, Plaintiff called, and a prerecorded message was played. Plaintiff followed the prompts then was connected to an agent from the Defendants. The agent did not disclose his name or the company on whose behalf he worked. This was despite the fact the agent proceeded to solicit Plaintiff for student loan relief services.

31. The Agent then asked Plaintiff qualifying questions regarding loan balance and current loan status. The agent also inquired as to Plaintiff's email and social security number which was used to access Plaintiff's student loan account at https://studentaid.gov. The agent accessed Plaintiff's account without permission.

32. Defendants' representative informed Plaintiff he would be having a verification text message sent to her phone. The message then came from the "FSA" making it appear as if the Defendant was a representative of the Federal Government.

33. Plaintiff followed the process and received an email from edwin.florez@certifystudentservices.org containing a contract that memorialized the conversation and revealed Certify as the company behind the anonymous prerecorded voice

6

messages.

34. Table below displays calls made to Plaintiff by Defendants:

| Number: | Date | Time | Length | Caller ID | Notes |
|---|---|---|---|---|---|
| 1. | 04/14/2022 | 12:48 PM | 8 sec | 802-369-1872 | Prerecorded voice message soliciting student loan relief |
| 2. | 06/16/2022 | 11:43 AM | 10 sec | 205-780-0665 | Prerecorded voice message soliciting student loan relief |
| 3. | 06/17/2022 | 11:58 AM | 5 sec | 949-209-0620 | Prerecorded voice message soliciting student loan relief |
| 4. | 07/04/2022 | 1:54 PM | 15 sec | 806-364-2947 | Prerecorded voice message soliciting student loan relief |
| 5. | 08/16/2022 | 12:59 PM | Missed Call | 409-269-7026 | Voicemail with prerecorded voice message |
| 6. | 08/26/2022 | 11:26 AM | 12 sec | 409-262-5121 | Prerecorded voice message soliciting student loan relief |

35. Plaintiff searched the Texas Secretary of State website and verified that Defendants do not and have not ever had a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas resident.

36. Defendant have designed their business model to confuse consumers and trick consumers into believing the Defendants are affiliated with U.S. government and they are federal employees and/or agents.

37. Defendants participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful calls, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful calls.

38. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

39. Plaintiff has limited data storage capacity on her cellular telephone. Incoming telemarketing calls consumed part of this capacity.

40. No emergency necessitated the calls.

41. None of the Defendants ever sent Plaintiff any do-not-call policy. Plaintiff sent an internal do-not-call policy request to info@certifystudentservices.org. on October 31, 2022, which is the email listed on their website https://certifystudentservices.org.

42. On information and belief, the Defendants did not have a written do-not-call policy while it was sending Plaintiff the unsolicited calls.

43. On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

### THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE DETERRENT EFFECT AND PURPOSE OF THE TCPA

44. As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

### DEFENDANT SHANE J. LEE IS PERSONALLY LIABLE

45. "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv.*

*Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

46. The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General MotorsClore Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct....or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

47. Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.
>
> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than

a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

48. The Same Court held that corporate officers were also personally liable for DTPA violations

> The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct.....For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation......Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

49. At all times material to the Complaint, acting alone or in concert with others, Defendant Lee has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant Lee, including the acts or practices set forth in this Complaint.

50. At all times material to the Complaint, acting alone or in concert with others, Defendant Lee has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant Lee, including the acts or practices set forth in this Complaint.

51. Defendant Lee is the principal director and operator of Defendant Lee, and control the day-to-day operations of Lee, and directed their employees, agents, salespersons, and solicitors to make TCPA violating phone calls and to solicit "student loan forgiveness" and "student loan consolidation" services.

52. Defendants collect their fees for the "student loan forgiveness" and "student loan consolidation" through credit card payments and authorized checks processed prior to providing any services. This is an unlawful payment processing scheme that collects payments

10

in advance of services rendered in violation of the TSR. 16 C.F.R. § 310.2(cc) and 16 C.F.R. § 310.4(a)(5)(i).

53. Defendant Lee knew the collection of fees before rendering service is illegal.

54. Defendant Lee knowingly and willfully ignores the law. Defendant Lee solicits the services of student loan forgiveness and collect money upfront before any services are performed or any debts are forgiven. The violations are the direct result of the instructions Defendant have given to their agents, employees, solicitors, salespersons, and others that carry out their schemes.

55. Defendant Lee is not a mere bystander. He is the mastermind that schemed, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

56. Defendant Lee is aware Defendant Certify's conduct violated the TCPA and Tex. DPTA and refused to alter their behavior. Defendant Lee is the sole director of Certify, and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop. Yet, they have taken no steps to stop the behavior because the behavior benefits them financially. Defendant Lee breaks the law with his eyes and pocketbooks wide open.

57. Defendant Lee and Defendant Certify should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via the Tex. DTPA because they committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

58. Defendant Lee should be held personally liable because to do otherwise would simply allow him to simply dissolve Lee and set up a new corporation and repeat their conduct. This would result in both the TCPA and DTPA being unenforceable.

**INJURY, HARM, DAMAGES, and ACTUAL DAMAGES**

## AS A RESULT OF THE CALLS

59. Defendants calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

60. Defendants calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

61. Defendants calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

62. Defendants calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

63. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of her cell phone.

## Plaintiff's cell phone is a residential number

64. The calls were to Plaintiff's cellular phone ending in -1859 which is Plaintiff's personal cell phone that she uses for personal, family, and household use. Plaintiff maintains no landline phones at her residence and has not done so for at least 5 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses her cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has her cell phone registered in her personal name, pays the cell phone from her personal accounts, and the phone is not primarily used for any business purpose.

## Violations of the Texas Business and Commerce Code § 302.101

65. The actions of the Defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and

bond on file with the Texas Secretary of State.

66. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

### FIRST CLAIM FOR RELIEF

### Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A)

### (Against All Defendants)

67. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

68. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing illegal calls to Plaintiff's cellular telephone numbers without her prior express written consent.

69. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

70. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

71. Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing calls to cellular telephone numbers without the prior express written consent of the called party.

## SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

72. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

73. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

    b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

    c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

85. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

86. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

87. Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

not-call list and training thereon and (2) include the name of the individual caller and name in the solicitations.

## THIRD CLAIM FOR RELIEF:

### Violations of the TCPA "Sales/DNC" Prohibitions 47 C.F.R. § 64.1200(c)

### (Against Defendant)

88. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

89. Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2).

90. Plaintiff was statutorily damaged at least six (6) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telephone calls described above, in the amount of $500 per call.

91. Plaintiff is entitled to an award up to $1500 in damages for each knowing and willful violation of 47 U.S.C. § 227(c)(3)(F).

## FOURTH CLAIM FOR RELIEF:

### Violations of The Texas Business and Commerce Code 302.101

96. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

97. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without her prior express written consent.

98. Plaintiff is entitled to an award of up to $5,000 in damages for each violation of Texas Business and Commerce Code 302.302(a).

99. Plaintiff is entitled to an award for all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees. Texas Business and Commerce Code 302.302(d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Yazmin Gonzalez prays for judgment against the Defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial.

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law.

C. An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the individual and corporation for 6 calls.

D. An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the individual and corporation for 6 calls.

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F. An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G. An award to Ms. Gonzalez of damages, as allowed by law under the TCPA;

16

H. An award to Ms. Gonzalez of interest and costs, as allowed by law and equity

I. Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

November 4, 2022,                                              Respectfully submitted,

Yazmin Gonzalez
Plaintiff, Pro Se
14205 Charles Pollock
El Paso, TX 79938
915-820-1859
Yazminsoto580@gmail.com